## M. ROSENDORF AND H. HIRSCHBERG, APPELLANTS, v. J. A. BAKER, RESPONDENT.

EVIDENCE—COPY OF LOST INSTRUMENT—QUESTIONS FOR JURY.—Where an instrument in writing is pleaded as a defense in an answer, and the making of the instrument is denied in the replication and on the trial, the original having been proven to be lost, a pretended copy produced and sworn to by two witnesses as a true copy, and the plaintiffs offer evidence tending to prove that no contract was executed, it is a question for the jury whether the paper produced is a copy of the lost paper, and whether it was executed between the parties.

CHATTEL, TITLE IN VENDOR AFTER DELIVERY.—When a chattel is delivered to one who has bargained for the purchase thereof, and agreed to pay therefor at a future day under an express contract that no title is to vest in him until payment, the property of the vendor is not divested, and the purchaser takes, at most, only a right by implication to the use of the chattel until default in the stipulated payment.

INSTRUCTIONS MUST BE PERTINENT.—The court may refuse to give instructions asked for when they are not pertinent.

APPEAL from Marion County.

This is an action for the conversion of an organ. The appellants claimed title to the organ through a purchase from D. L. Hedges, in September, 1878; the respondent, to defeat the claim, introduced testimony tending to show that Hedges never owned the organ; that he held it under a written agreement between himself and S. A. Nichols, executed in September, 1877, by the terms of which said organ was to be the property of Nichols until paid for, and that it had not been paid for; the pretended agreement was lost, and it is claimed that the following is a copy, excepting that it contains no signature by Hedges and no date, to wit:

" Received from S. A. Nichols, one Burdett organ, of the

value of one hundred and forty dollars, for which I executed and delivered to said S. A. Nichols my promissory note bearing date of September 1, 1877. Now, therefore, if I fail to pay according to the terms of the said note, I do hereby agree to pay to said S. A. Nichols the sum of five dollars per month rent for the organ, and to relinquish all claim on the organ and to return the same to said S. A. Nichols at my own expense; and it is further agreed that the said organ shall belong to and be the property of the said S. A. Nichols until the said sum of money is all paid. When this sum of one hundred and forty dollars, the value of the organ, is all paid, the said organ, together with this contract, shall belong to and be delivered to David Hedges.      (Signed,)                S. A. NICHOLS."

Hedges testified that he never executed said pretended agreement; that he purchased said organ from Nichols by an absolute parol sale, and gave his promissory note therefor, which matured about September 1, 1878. The testimony and the answer of the defendant showed that Nichols, in October, 1878, obtained in said circuit court judgment on said notes, and compelled the defendant, as sheriff, to sell said organ, as the property of Hedges, on an execution to enforce said judgment.

Among other things the court charged the jury as follows, to wit: "The defendant offers in evidence a copy of said written agreement. And this paper (holding in his hand the pretended copy above referred to) having been proved to be copy, and admitted in evidence, it becomes my duty to construe it." Also the following: " Whether it was wise, or unwise, for Hedges to make such a contract is not for us to determine. We are to take it as it is and give to it its legal effect." Also, the following: "Unless you find that Hedges obtained a title otherwise than by or under this instrument, of which this is a copy, he did not own the organ."

The jury found for the respondent and he had judgment, from which this appeal is taken.

*B. Hayden and W. M. Ramsey*, for appellant.

*John Kelsay*, for respondent.

By the Court, BOISE, J.:

It is claimed by the appellants that the court erred in instructing the jury that the copy of the written instrument, set out in the answer, was proved to be a true copy of the lost paper. That the fact as to whether it was a copy or not was a fact for the jury and not for the court. The paper being lost and a pretended copy being produced, this being secondary evidence, it was necessary for the party producing it to show that the original was lost and could not be produced. The question of the loss was for the court. This being determined in the affirmative, then it was necessary to prove the copy. It seems from the report of the case that what was claimed to be a copy, except the date and signatures, was produced and sworn to by two witnesses, who said the original had been signed. The copy so sworn to was admitted in evidence without objection on the part of the plaintiffs, who afterwards called as a witness Hedges, who testified that he did not sign this contract or any other contract in writing. The defendants had produced their copy, and the only material question was, whether or not Hedges had signed the original; that is to say, one precisely like the one produced. If it varied in substance or form from the original, Hedges could truthfully swear that he had not executed such a contract. There was no question before the jury as to whether or not there had been some other contract executed by the parties. The question was, therefore, necessarily confined to the copy produced by the defendant.

Counsel for the plaintiffs claim that two questions were raised for the jury: 1. Was the paper produced a copy of the instrument between the parties; 2. Was it executed by the parties. We think there was but one question, and that was, Was an instrument like the one produced signed by the parties? and this question was left to the jury, and there was no error on this point.

Again, it is claimed that the court erred in construing the writing. In this case the organ by the terms of the contract was to remain the property of Mrs. Nichols until

paid for.    There can be no mistaking the understanding of the parties, and it was binding on them, and subject to be enforced according to its true meaning and intent, unless it contravened some legal principle; and the organ became the property of Hedges by virtue of the delivery only.

In the head note to the case of *Henry* v. *Hoppock*, 15 N. Y. 409, it is declared that "when a chattel is delivered to one who has bargained for the purchase thereof, and agreed to pay therefor at a future day, under an express contract that no title shall vest in him until payment, the property of the vendor is not diverted, and the purchaser takes, at most, only a right by implication to the use of the chattel until default in the stipulated payments." That case is like this in principle, and we think such is the law as generally settled.    (See Benjamin on Sales, secs. 320, 411, 412, and *Forbs* v. *Marsh et al*. 15 Conn. 384.)

Again, it is claimed that the court erred in not giving the following instruction, which was requested to be given to the jury by the counsel for the appellants: "If the jury believe from the evidence that Mrs. Nichols had the organ in question sold as the property of Hedges, under the judgment which she obtained against Hedges on the notes for the organ, that she is estopped to claim that the title to the property was in her at the time; that is, at the time she had it sold." This question, we think, was not pertinent to the case, or any issue in the evidence.

The plaintiffs claimed the organ by virtue of a sale to them made in September, 1878.    Mrs. Nichols did not levy on the property until October, 1878.    We have already held that Hedges did not have the title by virtue of the written contract, under which it is claimed by defendant.    He was claiming it at the time he sold to the plaintiffs, and it might be that Mrs. Nichols was the owner at that time and claimed the organ as her property; and if the jury found that the written contract was executed as claimed, then she was the owner at the time of the sale to the plaintiffs.    She might afterwards, on making a demand for its delivery, or regarding Hedges as having forfeited his obligation by not paying the notes, or having tried to sell and thereby convert the property,

have concluded to treat him as the owner, and she would not be estopped from claiming that she was the owner until she did some act that was inconsistent with such ownership, and there is no evidence that she did such act until she levied on the organ as the property of Hedges, which was on the fourth of October, 1878, and after the sale to plaintiffs by Hedges. To make this act of hers an estoppel in favor of the plaintiffs, it must appear that the act creating the estoppel transpired before the sale by Hedges to plaintiffs. So that this act of hers, being after the sale to Hedges, could not operate as an estoppel in this case. And as to whether such an act would be an estoppel, provided it had occurred before the sale by Hedges to plaintiffs, we do not decide. It is enough that we hold that the levy is not an estoppel in this case.

We have found no error in this case, and think the judgment of the court below should be affirmed.